**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

DAVID B. K.,[1]

                    Plaintiff,

    v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                    Defendant.

Case No. 4:20-cv-00035-TMB

<u>**DECISION AND ORDER**</u>

On or about July 9, 2018, David B. K. ("Plaintiff") protectively filed an application

for disability insurance benefits ("SSDI") under Title II of the Social Security Act ("the

Act"),[2] alleging disability beginning May 1, 2012.[3]  Plaintiff has exhausted his

administrative remedies and filed a Complaint seeking relief from this Court.[4]  Plaintiff's

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.  *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time.  Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income.  Plaintiff brought claims under Title II.  Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs.  *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI).  For convenience, the Court cites the regulations governing disability determinations under both titles.

[3] Administrative Record ("A.R.") 15.  The record appears to contain only the application summary, not the application itself.  The application summary lists July 25, 2018 as the application date.  A.R. 244.

[4] Docket 1 (Plaintiff's Compl.).

opening brief asks the Court to enter judgment under Sentence Four of 42 U.S.C. § 405(g), reversing and remanding the agency's final decision for further administrative proceedings.[5]  The Commissioner filed an Answer and a brief in opposition to Plaintiff's opening brief.[6]  Plaintiff filed a reply brief on June 29, 2021.[7]  Oral argument was not requested and was not necessary to the Court's decision.  On August 26, 2021, Defendant Commissioner Saul was substituted by Acting Commissioner Kilolo Kijakazi pursuant to Federal Rule of Civil Procedure 25(d).[8]  This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[9]  For the reasons set forth below, Plaintiff's request for relief is granted.

## I.   STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.[10] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[11]  Such evidence must be "more than a mere scintilla," but may be "less than

---

[5] Docket 23 (Plaintiff's Br.) at 19.

[6] Docket 15 (Answer); Docket 25 (Defendant's Br.).

[7] Docket 26 (Reply).

[8] Docket Annotation (August 26, 2021).

[9] 42 U.S.C. § 405(g).

[10] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[11] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v.*

Case No. 4:20-cv-00035-TMB
Decision and Order
Page 2 of 27

a preponderance."[12]   In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge ("ALJ")'s conclusion.[13]  If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[14]  A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which [s]he did not rely."[15]   An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[16]  Finally, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[17]  In particular, the

---

*NLRB*, 305 U.S. 197, 229 (1938)).

[12] *Richardson*, 402 U.S. at 401; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975) (per curiam).

[13] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[14] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[15] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

[16] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

[17] *Smolen v. Chater,* 80 F.3d 1273,1288 (9th Cir. 1996) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)); *see also Garcia v. Comm'r of Soc. Sec.,* 768 F.3d 925, 930 (9th Cir. 2014).

Ninth Circuit has found that the ALJ's duty to develop the record increases when the claimant is unrepresented or is mentally ill and thus unable to protect his own interests.[18]

## II. DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[19] In addition, Supplemental Security Income ("SSI") may be available to individuals who do not have insured status under the Act but who are age 65 or older, blind, or disabled.[20] Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[21]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[22]

---

[18] *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001).

[19] 42 U.S.C. § 423(a).

[20] 42 U.S.C. § 1381a.

[21] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[22] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Case No. 4:20-cv-00035-TMB
Decision and Order
Page 4 of 27

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[23] A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[24] If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[25] The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[26] The steps, and the ALJ's findings in this case, are as follows:

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity."[27] *The ALJ determined that Plaintiff had not engaged in substantial activity during the period from the alleged onset date of May 1, 2012 through his date last insured of December 31, 2017.[28]*

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work

---

[23] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[24] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[25] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098 (emphasis in original).

[26] *Tackett*, 180 F.3d at 1101.

[27] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[28] A.R. 17.

experience. The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[29] *The ALJ determined that Plaintiff had the following medically determinable impairments: history of depression, manic disorder, and alcohol abuse. The ALJ determined that Plaintiff's posttraumatic stress disorder (PTSD) was not medically determinable. The ALJ did not proceed beyond Step Two in her analysis, finding, "[t]hrough the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments."[30]*

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from May 1, 2012, the alleged onset date, through December 31, 2017, the date of the ALJ's decision.[31]

### III. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was born in 1972 and was 40 years old on the alleged onset date.[32] He reported last working as a bike mechanic from March 2010 to April 2012. In the past, he reported working as a heavy duty mechanic.[33] On September 21, 2018, the Social Security Administration ("SSA") determined that Plaintiff was not disabled under the

---

[29] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[30] A.R. 17–18.

[31] A.R. 22.

[32] A.R. 244.

[33] A.R. 280.

Case No. 4:20-cv-00035-TMB
Decision and Order
Page 6 of 27

applicable rules.[34]  On August 19, 2019, Plaintiff appeared and testified with representation in a video hearing from Fairbanks, Alaska, before ALJ Cecilia LaCara in Anchorage, Alaska.[35]  The ALJ continued the hearing to allow Plaintiff's attorney to complete the medical record between the alleged onset date and date last insured.[36]  On December 9, 2019, Plaintiff appeared and testified with representation again by video at a continued hearing before ALJ Cecilia LaCara.[37]  On January 23, 2020, the ALJ issued an unfavorable ruling.[38]  On September 3, 2020, the Appeals Council denied Plaintiff's request for review.[39]  On October 20, 2020, Plaintiff appealed the Commissioner's final decision to this Court.[40]

## IV.    DISCUSSION

Plaintiff is represented by counsel in this appeal.  In his opening brief, Plaintiff alleges that the ALJ's decision to end the disability analysis at Step Two was "contrary to law and not supported by substantial evidence."  Specifically, Plaintiff asserts: (1) the ALJ erred by relying on the opinions of Dr. Moore and Dr. Lace; (2) the ALJ failed to conduct a drug and alcohol materiality analysis under Social Security Ruling (SSR) 13-2p; (3) the

---

[34] A.R. 90.

[35] A.R. 70–81.

[36] A.R. 15, 66, 78.

[37] A.R. 39–47.

[38] A.R. 12–22.

[39] A.R. 1–5.

[40] Docket 1.

Case No. 4:20-cv-00035-TMB
Decision and Order
Page 7 of 27

ALJ did not provide specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony and failed to "even acknowledge Plaintiff's stellar work history"; and (4) the ALJ failed to consider the lay statements from Plaintiff's mother and former employer.[41]  The Commissioner contends: (1) the ALJ's reliance on opinions from three medical sources "amounted to substantial evidence supporting the ALJ's finding at step two"; (2) the ALJ was not required to conduct a drug and alcohol analysis because "Plaintiff was not disabled even when considering the effects of his alcohol abuse"; (3) the ALJ "did not arbitrarily discredit Plaintiff's testimony, nor was the assessment unreasonable"; and (4) the ALJ's reasons for discounting Plaintiff's testimony applied to the lay statements and any error in failing to discuss the lay statements was harmless.[42] The Court will address Plaintiff's claims below.

A.  The ALJ's Step Two Analysis

At Step Two, a social security claimant bears the burden of showing through medical evidence that he or she has a severe impairment.[43]  To be "severe," a claimant's impairment or combination of impairments must "significantly limit[]" his or her "physical or mental ability to do basic work activities."[44]  An ALJ may find an impairment non-severe

---

[41] Docket 23 at 11–19.

[42] Docket 25 at 2–7.

[43] 20 C.F.R. §§ 404.1512 & 416.912; *see also, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1159–60 (9th Cir. 2001) ("[O]nce a claimant has shown that he suffers from a medically determinable impairment, he next has the burden of proving that these impairments or their symptoms affect his ability to perform basic work activities.").

[44] 20 C.F.R. §§ 404.1520(c), 404.1522(a), 416.920(c) & 404.922(a).

Case No. 4:20-cv-00035-TMB
Decision and Order
Page 8 of 27

at Step Two "*only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."[45]  The Step Two analysis is "merely a threshold determination meant to screen out weak claims."[46]  As such, errors cannot prejudice a claimant at Step Two if the ALJ decides Step Two in his or her favor.[47]

In this case, the ALJ determined that because Plaintiff's "medically determinable mental impairments caused no more than 'mild' limitation[s] in any of the functional areas [known as the 'paragraph B' criteria] <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in [Plaintiff]'s ability to do basic work activities, [Plaintiff's impairments] were nonsevere."[48]  The ALJ did not proceed to Steps Three, Four, or Five in her analysis.

B.  Medical Opinions

Plaintiff applied for Title II benefits on or about July 9, 2018, so the new regulations apply to his claim.[49]  Under the new regulations, the definition of what constitutes a medical opinion has narrowed, focusing on what the claimant can do despite his

---

[45] *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)).

[46] *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017); *see also Webb*, 433 F.3d at 687 (characterizing Step Two as "a *de minimis* screening device [used] to dispose of groundless claims").

[47] *Buck*, 869 F.3d at 1049.

[48] A.R. 22.

[49] A.R. 15, 244.

impairments and what work-related limitations are present.[50]  The new regulations define

a medical opinion as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:
>
> (i)    Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii)   Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii)  Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv)   Your ability to adapt to environmental conditions, such as temperature or fumes.[51]

The new regulations provide that the ALJ no longer gives any particular weight to

a medical opinion based on its source, thereby eliminating the treating source rule.[52]

Instead, the ALJ considers the persuasiveness of a medical opinion based on five factors:

(1) supportability; (2) consistency; (3) relationship with the claimant, including length,

extent, and type of treatment; (4) specialization; and (5) other relevant factors that support

---

[50] *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1513(a)(2).

[51] 20 C.F.R. § 404.1513(a)(2).

[52] *Revisions to Rules Regarding the Evaluation of Medical Evidence,* 82 Fed. Reg. 5844-01 (Jan. 18, 2017), *available at* 2017 WL 168819, at *5867–68; 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (for claims filed on or after March 27, 2017).

Case No. 4:20-cv-00035-TMB
Decision and Order
Page 10 of 27

or contradict the medical opinion.[53]  Supportability and consistency are considered the most important factors for evaluating persuasiveness.[54]  Supportability and consistency are explained as follows in the regulations:

> (1) Supportability.  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency.  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[55]

Generally, these are the only two factors the ALJ is required to address in her decision.[56]  However, when two or more medical opinions or prior administrative medical findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain how "the other most persuasive factors" were considered.[57]

//

---

[53] 20 C.F.R. § 404.1520c(c).

[54] The regulations state, "The factors of supportability . . . and consistency . . . are the most important factors [the SSA] consider[s] when [the SSA] determine[s] how persuasive [the SSA] find[s] a medical source's medical opinions or prior administrative medical findings to be."  20 C.F.R. § 404.1520c(b)(2) (for claims filed on or after March 27, 2017).

[55] 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

[56] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.").

[57] 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (for claims filed on or after March 27, 2017).

*1. Margaret Moore, Ph.D.*

Plaintiff asserts that testifying medical expert Margaret Moore's opinion regarding Plaintiff's history of substance abuse was not supported by the record and was contradicted by testifying medical expert Michael Lace's opinion that Plaintiff's substance abuse during the relevant disability period was "fully remitted."[58]   The Commissioner counters that the ALJ's reliance on Dr. Moore's medical opinion, in combination with Drs. Lace's and Anderson's opinions, was sufficient to support the ALJ's Step Two finding.[59]

At the first hearing on August 19, 2019, Margaret Moore, Ph.D., testified as the mental health medical expert.  She pointed out that the treatment notes during the period between the alleged onset date of May 1, 2012 and the date last insured of December 31, 2017, were quite limited.  She opined that despite the lack of records during the relevant period, "in light of a fair amount of record that has occurred in the last year or so," a bipolar diagnosis was reasonable.[60]   However, Dr. Moore also expressed "some concern about the role of substance abuse" in relation to assessing the severity of Plaintiff's bipolar disorder.  Dr. Moore then testified,

> "Apparently [substance abuse] has been a problem for [Plaintiff] for a long time.  At one point or another, more or less, but that's also familiar with bipolar patients and, so it's, it complicates any kind of speculation that I might make, because if he's . . . if he was . . . using substances — meds, alcohol . . . more actively in that timeframe that no doubt is going to interfere with his functioning.  And I think we see in the subsequent records, the more recent 2018 notes, that when he's clean and sober

---

[58] Docket 23 at 12.

[59] Docket 25 at 2–3.

[60] A.R. 60–62.

Case No. 4:20-cv-00035-TMB
Decision and Order
Page 12 of 27

he's obviously functioning better. He's taking medications that are prescribed by mental health. So the substance abuse seems to be less of a, a player."[61]

The ALJ found Dr. Moore's opinions to be persuasive because she reviewed the entire longitudinal record, gave a reasonable explanation, was subject to cross-examination, and had knowledge of the SSA disability program. Based on Dr. Moore's opinion, the ALJ concluded that the "[s]everity of [Plaintiff]'s bipolar disorder could not be determined with any confidence based on the very minimal records during the adjudicative period."[62] The ALJ then determined that Plaintiff did not have a severe impairment or combination of impairments and ended her inquiry at Step Two.[63]

However, Dr. Moore's opinion does not express an actual functional opinion.[64] And, as pointed out by Plaintiff, the ALJ's reliance on Dr. Moore's opinion to determine Plaintiff's bipolar disorder was non-severe, is not supported by the medical record. For example, at a patient visit in May 2012, Plaintiff reported that he had not used alcohol since May 2011.[65] In January and December 2013, Plaintiff again reported rarely using

---

[61] A.R. 63–64.

[62] A.R. 19.

[63] A.R. 18.

[64] *Ford v. Saul,* 950 F.3d 1141, 1156 (9th Cir. 2020) ("Here, the ALJ found that Dr. Zipperman's descriptions of Ford's ability to perform in the workplace as 'limited' or 'fair' were not useful because they failed to specify Ford's functional limits. Therefore, the ALJ could reasonably conclude these characterizations were inadequate for determining RFC.").

[65] A.R. 700.

Case No. 4:20-cv-00035-TMB
Decision and Order
Page 13 of 27

alcohol and that he no longer had a desire to abuse alcohol.[66]  Although he testified to

using drugs after losing his job in 2012 or 2013, the effect of Plaintiff's drug use on his

functioning during the relevant period is unclear.  The ALJ did not inquire further at the

hearing and did not follow up on this issue.[67]  In 2018 and 2019, medical providers

continued to assess Plaintiff with alcohol use disorder in remission and with

methamphetamine abuse in remission.[68] At Plaintiff's continued hearing on December 9,

2019, medical expert Michael Lace, Psy.D., testified that Plaintiff had "a history of what

appears to be fully remitted alcohol abuse."[69]  This opinion conflicts with Dr. Moore's

substance use opinion.  Moreover, as shown above, Dr. Moore testified that a bipolar

diagnosis was reasonable given the records post-dating Plaintiff's date last insured.[70]  In

sum, the ALJ's reliance on Dr. Moore's opinion to determine that Plaintiff's bipolar disorder

was not severe at Step Two was in error.  This error was harmful because the ALJ did not

continue her sequential analysis of Plaintiff's impairments beyond Step Two.[71]

   *2.  Michael Lace, Psy.D.*

   Plaintiff asserts that Dr. Lace's testimony that "Plaintiff's mental impairments and

---

[66] A.R. 707, 715.

[67] A.R. 75.

[68] A.R. 448, 478, 482, 487, 520, 526, 534, 560, 602, 636, 645, 661, 669, 791, 799, 808, 818, 826.

[69] A.R. 35.

[70] A.R. 62.

[71] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015).

Case No. 4:20-cv-00035-TMB
Decision and Order
Page 14 of 27

related severe symptoms were not ongoing is inconsistent with [the] medical evidence."[72] The Commissioner counters that the ALJ reasonably found Dr. Lace's opinion more persuasive than Plaintiff's testimony.[73]

Michael Lace, Psy.D., testified at Plaintiff's second hearing regarding Plaintiff's mental impairments. He opined that the record during the adjudicatory period did not support any severe mental impairments. Dr. Lace testified that the record showed Plaintiff had been diagnosed with depressive disorder, alcohol abuse in remission, and manic disorder versus a mood disorder. He noted Plaintiff's mental examinations were within normal limits, except for a somewhat labile mood and low-level depression. Dr. Lace opined that Plaintiff did not have a severe impairment lasting more than 12 months.[74]

Under the new regulations, the ALJ must articulate how she considered the supportability and consistency factors in addressing the persuasiveness of a medical opinion.[75] Here, the ALJ found Dr. Lace's opinion persuasive "because Dr. Lace reviewed the entire, longitudinal medical record, gave a reasonable explanation for [his] opinion, was subject to cross-examination, and has knowledge of our disability program." The ALJ noted that although the record showed Plaintiff reported his job was in jeopardy due to his unstable mood, Dr. Lace testified that it was a "self-report without any objective evidence to corroborate the claim and the mental status examinations of record were

---

[72] Docket 23 at 14.

[73] Docket 25 at 5.

[74] A.R. 35–37.

[75] 20 C.F.R. § 404.1520c(a)–(b).

Case No. 4:20-cv-00035-TMB
Decision and Order
Page 15 of 27

largely within normal limits."  The ALJ also pointed out that although treatment notes from the relevant period showed Plaintiff was emotional and tearful, Dr. Lace testified that "there [was] no evidence to support that these symptoms last 12 months or more."  Finally, the ALJ reasoned that although the treatment notes showed a reference to Plaintiff losing his job due to mood instability and an abnormal affect, pressured speech, a slightly disorganized thought process, and mild anxiety, this was a "one-time decomposition" according to Dr. Lace's testimony.[76]

However, the ALJ did not address the inconsistencies between Dr. Lace's opinions and Dr. Moore's opinions regarding Plaintiff's substance use or the inconsistencies between the two physicians' opinions regarding the severity of Plaintiff's bipolar disorder during the disability determination period.  And, although Dr. Lace opined that Plaintiff's reports of his work being negatively impacted by his unstable mood were not supported by objective evidence and there was no evidence to support Plaintiff's symptoms lasting 12 months or more, this opinion is not supported by the medical record.  To the contrary, the medical record shows that Plaintiff displayed symptoms associated with bipolar disorder and depression in the few records from the relevant period.[77]  Additionally, the medical record shows that Plaintiff's symptoms continued and worsened in the period immediately following his date last insured.  For example, in May 2018, Plaintiff was hospitalized for one week at Fairbanks Memorial Hospital for aggressive behavior

---

[76] A.R. 19–20.

[77] A.R. 699–709, 715–16, 754–55 (progress note is dated December 30, 2013, but the note was electronically signed by treating physician Ray Kelley, M.D., on August 29, 2018).

Case No. 4:20-cv-00035-TMB
Decision and Order
Page 16 of 27

associated with a manic episode of bipolar affective disorder.[78] He continued to seek treatment for poorly managed bipolar disorder in 2018 and 2019.[79] In sum, the ALJ did not adequately evaluate the consistency and supportability of Dr. Lace's medical opinion. This error was harmful because it resulted in the ALJ ending the sequential disability analysis at Step Two.

C. DAA Materiality Analysis

Plaintiff asserts that to the extent the ALJ relied on Dr. Moore's substance use opinion, the ALJ failed to conduct a drug and/or alcohol analysis pursuant to Social Security Regulation (SSR) 13-2p.[80] The Commissioner alleges "no medical source suggested that Plaintiff had any limitations arising from any of his medically determinable impairments, including alcohol abuse" and therefore, the ALJ was not required to consider a materiality analysis for "drug addiction and alcoholism" (DAA) under SSR 13-2p.[81]

Pursuant to SSR 13-2p, the Social Security Administration (SSA) will make a DAA materiality determination only when the following requirements are met: (1) there is medical evidence from an acceptable medical source establishing that a claimant has a Substance Use Disorder, as defined in SSR 13-2p; (2) the SSA finds that the claimant is disabled considering all impairments, including the DAA; and (3) if the claimant's DAA is

---

[78] A.R. 718–38.

[79] A.R. 695–96, 757–58, 760–70, 772–808, 811–843.

[80] Docket 23 at 12.

[81] Docket 25 at 4.

Case No. 4:20-cv-00035-TMB
Decision and Order
Page 17 of 27

relevant to the period under consideration.[82]

The requirements of SSR 13-2p were not met in this case. In the medical record, Plaintiff reported to providers that he was not abusing alcohol and after the date last insured, Plaintiff's providers repeatedly noted that Plaintiff's substance abuse was in remission.[83] Although Plaintiff testified that he used drugs after losing his job in 2012 or 2013, the ALJ did not find Plaintiff disabled, with or without his DAA.[84] Given the sparse medical record and the ALJ's determination that Plaintiff was not disabled at Step Two, Plaintiff's DAA was not established during the period under consideration. However, because the Court is remanding on other grounds in this case, a DAA materiality analysis may be appropriate in further proceedings.

D. Symptom Testimony

Plaintiff testified at hearings in August and December 2019. At the August 2019 hearing, Plaintiff testified that he lost his job at CH2M Hill for "[a]nger issues with foremen[ ] and getting a DUI." After a gap in employment, Plaintiff testified that he went to work at a bicycle shop in Anchorage. He testified that he would have anxiety attacks trying to get to work. After ending up curled in a ball on the side of a busy street in Anchorage, Plaintiff sought out medical help sometime in 2012. He was prescribed Lamictal and took a week

---

[82] Social Security Ruling (SSR) 13-2p, 2013 WL 621536, at *4. Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. *See* 20 C.F.R. 402.35(b)(1).

[83] *E.g.,* A.R. 448, 478, 482, 487, 520, 526, 534, 560, 563, 602, 636, 645, 661, 669, 700, 707, 715, 791, 799, 808, 818, 826. Plaintiff did testify that he used illicit drugs after losing his last job, but there is no medical source statement establishing a Substance Use Disorder. A.R. 75.

[84] A.R. 22.

Case No. 4:20-cv-00035-TMB
Decision and Order
Page 18 of 27

off work.  He testified that when he went back to the bicycle shop, his boss fired him because other employees and customers "couldn't deal with the mood swings."  Plaintiff testified that he was arrested a lot, once for throwing a rock through someone's window, but he could not recall the circumstances of other arrests.  He reported staying with a friend until he was kicked out, then living in a school bus in a storage yard until it was sold, living in his tent, attempting suicide at a friend's shop, and finally contacting his parents.  He testified that he asked people to help him get to the hospital, but he "didn't want to be told that there was something wrong with me" and "didn't want to be put into treatment and not get out of the doctor's office and out in another jail type situation or [be] put into a situation that I wasn't able to leave."  He admitted to taking illicit drugs after losing his last job.[85]

In December 2019, Plaintiff testified that he lost his job as a bicycle mechanic due to his unstable mood, anxiety, manic and depressive episodes, and not showing up to work on time because of those conditions.  He testified that he did not listen very well to authority figures and "just did what I wanted to do."  He testified that he could concentrate and finish a project if left alone.  Plaintiff also testified that he had been taking prescribed medication and receiving mental health services since 2018 and that he had not had his medication adjusted in the previous five to six months.  He reported living with his mother

---

[85] A.R. 70–76.

Case No. 4:20-cv-00035-TMB
Decision and Order
Page 19 of 27

and stepfather at the time of the hearing. Plaintiff did not feel he could live independently.[86]

Plaintiff alleges that the ALJ failed to provide clear and convincing reasons for discounting his subjective complaints. Specifically, he asserts that it was error for the ALJ to discount Plaintiff's symptom testimony due to a lack of treatment during the disability period at issue. Plaintiff also argues that the ALJ failed to consider the lay statements from Plaintiff's mother and employer, "who explicitly corroborated his allegations."[87] Additionally, Plaintiff alleges that the ALJ should have addressed Plaintiff's "stellar work history."[88] The Commissioner responds that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective testimony because she carefully considered the evidence, including Plaintiff's work history, the ALJ reasonably favored the contradictory medical opinions of Drs. Lace and Moore over Plaintiff's testimony, and the ALJ was not required to consider the lay statements.[89]

An ALJ's assessment of a claimant's symptoms has two steps.[90] First, the ALJ determines whether the claimant has presented "objective medical evidence of an

_____

[86] A.R. 39–45.

[87] Docket 23 at 14–16.

[88] Docket 23 at 17–19.

[89] Docket 25 at 5–7. In a footnote, the Commissioner asserts that the "clear and convincing reasons" standard is inconsistent with the deferential substantial evidence standard set forth in 2 U.S.C. § 405(g), but that the "ALJ's reasoning here satisfied either standard." Docket 25 at 4, n.1.

[90] *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).

Case No. 4:20-cv-00035-TMB
Decision and Order
Page 20 of 27

underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[91]   In the first step, the claimant need not "show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom.  Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof."[92]   Here, the ALJ determined that Plaintiff's impairments could reasonably be expected to cause some of the alleged symptoms that Plaintiff described.[93]

Second, if the claimant has satisfied step one and the ALJ has determined that the claimant is not malingering, the ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's testimony regarding the severity of the claimant's symptoms.[94] This standard is "the most demanding required in Social Security cases."[95]  Here, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were inconsistent with the medical evidence and other evidence in the record.  The ALJ reasoned that a lack of treatment until May 2018, after the date last

---

[91] *Id.* (quoting *Garrison v. Colvin,* 759 F.3d 995, 1014–15 (9th Cir. 2014)).

[92] *Garrison v. Colvin,* 759 F.3d 995, 1014–15 (9th Cir. 2014) (internal citations and quotations omitted).

[93] A.R. 20.

[94] *Trevizo,* 871 F.3d at 678.

[95] *Id.*

Case No. 4:20-cv-00035-TMB
Decision and Order
Page 21 of 27

insured, suggested that Plaintiff's impairments were not severe. As support, the ALJ stated, "he was using illicit drugs, for which he apparently had money."[96]

A longitudinal record demonstrating a claimant's attempts to seek medical treatment and attempts to follow up on the prescribed treatment lends support to a claimant's symptom testimony. Therefore, an ALJ may consider a claimant's lack of treatment if there are no good reasons for this failure. "However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."[97] A failure to seek medical help due to a lack of funds is one such explanation.[98]

In this case, Plaintiff argues the ALJ failed to consider that Plaintiff was "homeless, lacked finances, and did not have health insurance for the majority of the relevant time period."[99] As set forth above, Plaintiff testified to being fired from his last job for his unstable mood, to experiencing homelessness for a portion of the relevant period, and to not being able to afford his medication.[100]

---

[96] A.R. 20.

[97] SSR 96-7p, 1996 WL 374186, at *7–8.

[98] *Gamble v. Chater,* 68 F.3d 319, 321 ("Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds.");

[99] Docket 23 at 14.

[100] A.R. 72, 74–75.

While the ALJ considered Plaintiff's lack of finances during the disability period, she discounted Plaintiff's symptom testimony because Plaintiff admitted to using illicit drugs during the relevant period. She found that this drug use indicated that Plaintiff did not lack funds.[101] However, a single statement by Plaintiff that he used drugs does not negate Plaintiff's testimony that he did not seek treatment because he could not afford it. And, although the Commissioner argues that Plaintiff also testified that he did not seek treatment for reasons other than finances, stating that he "didn't want to be told that there was something wrong with me" and "didn't want to be put into treatment and not get out of the doctor's office and out in another jail type situation or [be] put into a situation that I wasn't able to leave," the ALJ did not provide this as a reason for discounting Plaintiff's testimony.[102] We are confined to reviewing the reasons the ALJ asserts.[103] Moreover, Plaintiff's additional reasons for failing to seek treatment are not necessarily contradictory to being homeless, lacking insurance, and lacking finances. And, in the Ninth Circuit, courts have particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because "'it is a questionable practice to chastise one with a mental impairment for the exercise of

---

[101] A.R. 20, 75.

[102] A.R. 74.

[103] *Brown-Hunter v. Colvin,* 806 F.3d 487, 494 (9th Cir. 2015) ("As we have long held, we are constrained to review the reasons the ALJ asserts.") (quotations, citations, and emphasis omitted).

Case No. 4:20-cv-00035-TMB
Decision and Order
Page 23 of 27

poor judgment in seeking rehabilitation.' " [104] Thus, the fact that Plaintiff did not seek treatment during a portion of the disability period is not a clear and convincing reason to discredit Plaintiff's symptom testimony in this case.[105]

Plaintiff also argues that the ALJ failed to consider Plaintiff's "exemplary work history" as part of the ALJ's analysis of Plaintiff's symptom testimony, pursuant to 20 C.F.R. § 404.1529(c)(3) and SSRs 96-8p and 16-3p.[106] In the Ninth Circuit, a claimant's poor work history is a clear and convincing reason for discounting Plaintiff's symptom testimony.[107] However, recent district courts in the Ninth Circuit have rejected the argument that an ALJ is required to specifically address as claimant's "exemplary work history."[108] In this case, the ALJ did not specifically discuss Plaintiff's work history as part of her symptom testimony analysis. This was harmless error. However, the ALJ's stated

---

[104] *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299–300 (9th Cir. 1999) (internal quotations and citations omitted).

[105] *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

[106] Docket 23 at 18.

[107] *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002) ("In addition to finding no objective medical evidence evidence to support Ms. Thomas' descriptions of her pain and limitations, the ALJ found that Ms. Thomas had an extremely poor work history and has shown little propensity to work in her lifetime, which negatively affected her credibility regarding her inability to work.") (internal citations omitted).

[108] *Greer v. Comm'r of Soc. Sec.*, 2018 WL 5885942, *8 (C.D. Cal. Nov. 7, 2018) ("An ALJ is not required to discuss the claimant's work history in determining credibility."), citing *Rocha v. Comm'r of Soc. Sec.*, No. 15-1298, 2016 WL 7034739, at *16 (E.D. Cal. Dec. 1, 2016); *see also Smith v. Colvin*, No. 11-3045, 2013 WL 1156497, at *7 (E.D. Cal. Mar. 19, 2013) (rejecting claimant's argument that ALJ was required to consider good work history and noting lack of authority "suggesting an ALJ is bound to make a certain credibility determination based on a lengthy or 'good' work history"); *Henderson v. Colvin*, No. 14-870, 2015 WL 5768934, at *6 (C.D. Cal. Sept. 30, 2015) ("Plaintiff's assertion that his fairly 'consistent and continuous employment for 32 years' is necessarily probative of his credibility is equally unconvincing.").

reasons for rejecting Plaintiff's symptom testimony failed to meet the clear and convincing standard. Therefore, the ALJ did not offer specific, clear, and convincing reasons for rejecting Plaintiff's testimony regarding his mental impairments.

E. Lay Statements

Next, the ALJ did not consider the lay statements by Plaintiff's mother and employer, noting that she was not required to consider evidence from non-medical sources to corroborate Plaintiff's allegations.[109] Plaintiff's mother reported that Plaintiff's bipolar disorder caused Plaintiff to have extreme highs and lows in mood; at times only wanting to sleep and at other times, experiencing withdrawal, anger, agitation, emotional highs and lows, rapid talking, and loud talking. She reported that Plaintiff would overspend and ignore debts depending on the highs and lows of his bipolar disorder. She also reported that Plaintiff's moods had stabilized now that he was taking medication. She noted that he was better able to pay attention and finish what he started and he was trying to re-establish a relationship with his own son.[110] In a second third-party statement, Plaintiff's mother noted that although Plaintiff was on medication, "he still [had] the highs and lows associated w[ith] Bipolar disorder."[111] Plaintiff's former employer wrote a letter on Plaintiff's behalf. He described Plaintiff as a "talented [bike] mechanic" and that he was great for a number of months, but Plaintiff became "difficult to work with and then just

---

[109] A.R. 20–21.

[110] A.R. 315–23.

[111] A.R. 358.

difficult to be around." Plaintiff's employer reported that Plaintiff's moods became very unpredictable and eventually he and the staff "couldn't deal with [Plaintiff's] mood swings and attitude any longer." Plaintiff's employer reported that Plaintiff "bounced around a lot as far as his living conditions, which was due to his unpredictable behavior."[112]

As pointed out by Plaintiff, these statements are clearly not medical opinions, but are relevant to the analysis of Plaintiff's symptom testimony.[113] Thus, the ALJ's reliance on 20 C.F.R. § 404.1520c(d) is misplaced. The regulations regarding the evaluation of symptoms state, "[w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons."[114] In the Ninth Circuit, the ALJ must consider competent lay testimony, but the ALJ need only provide reasons that are "germane to [the] witness."[115] The ALJ's failure to consider the lay statements of Plaintiff's mother and employer was error. This error was harmful because the ALJ ended her inquiry at Step Two in the disability analysis.[116]

//

//

---

[112] A.R. 366.

[113] Docket 23 at 15–16.

[114] 20 C.F.R. § 404.1529(c)(3).

[115] *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1164 (9th Cir. 2008).

[116] *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299–300 (9th Cir. 1999) (internal quotations and citations omitted).

F.  Scope of Remand

Plaintiff asks the Court to vacate the final agency decision and remand for further administrative proceedings.[117]  The "ordinary remand rule" applies to disability cases. Under this rule, if "the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[118] For the above reasons, the proper remedy is reversal and remand for further administrative proceedings and the issuance of a new decision with appropriate findings at each step of the sequential evaluation.

## V.  ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are not free from legal error and are not supported by substantial evidence in the record.  Accordingly, IT IS ORDERED that Plaintiff's request for relief at Docket 23 is GRANTED; the Commissioner's motion at Docket 25 is DENIED; and this matter is REMANDED for further proceedings consistent with this order.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 11th day of January, 2022 at Anchorage, Alaska.

/s/ Timothy M. Burgess
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[117] Docket 24 at 24.

[118] *Treichler,* 775 F.3d at 1099 (quoting *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985)).

Case No. 4:20-cv-00035-TMB
Decision and Order
Page 27 of 27